UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ELAINE CAO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:17-cv-02736-HEA |
| ) | |
| CHESS CLUB AND SCHOLASTIC CENTER ) | |
| OF ST. LOUIS, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Defendant Chess Club and Scholastic Center of St. Louis (the "Club" or "Defendant") is entitled to judgment as a matter of law in this action because Plaintiff Elaine Cao ("Plaintiff") failed to state a claim upon which relief can be granted. The Club does not engage in or condone any form of discrimination against transgender persons. Thus, philosophically, the Club and Plaintiff agree that no one should face employment discrimination on the basis of gender identity or transgender status. The parties' moral alignment, however, is immaterial to the simple question of law that this case presents: Did Congress intend to create a cause of action for transgender discrimination when enacting the Civil Rights Act of 1964? Because it is clear that no such Congressional intent existed, Plaintiff's action must be dismissed with prejudice.

**I.    COMPLAINT ALLEGATIONS**

Plaintiff worked as a chess instructor for the Club. *See* Compl. ¶ 12.[1/] Plaintiff alleges she presented as male until June 25, 2016, at which time she began presenting as female. *Id.* The Club notified Plaintiff of her termination on June 27, 2016. *Id.* Plaintiff filed a one-count complaint ("Complaint") on November 20, 2017. The Complaint alleges the Club discriminated against

---

[1/]   The docket includes two copies of the Complaint. For clarity, citations appearing in this brief refer to the handwritten allegations.

1

Plaintiff "on the basis of [her] sex, female," and that the Club "took [her] gender into account and terminated [her] for gender non-conforming appearance and behavior, and/or for transitioning from one gender to another and/or for being a transgender individual." *Id.*

## II. LEGAL STANDARD

Rule 12(b)(6) authorizes dismissal of an action when complaint allegations do not state a facially plausible claim. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Furthermore, a court should grant a Rule 12(b)(6) motion when it is clear from the facts of the complaint that there is some insuperable bar to relief. *Krentz v. Robinson*, 228 F.3d 897, 905 (8th Cir. 2000).

## III. DISCUSSION

### A. Controlling Precedent Requires Dismissal.

The Complaint alleges a violation of Title VII of the Civil Rights Act of 1964 ("Title VII") based on Plaintiff's transgender status. To state a claim for discriminatory termination under Title VII, a plaintiff must allege facts indicating that her membership in a protected class motivated the decision to terminate her employment. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Plaintiff fails to satisfy this *prima facie* requirement because Title VII does not recognize transgender status or gender identity as a protected characteristic. *Sommers v. Budget Mktg., Inc.*, 667 F.2d 748, 750 (8th Cir. 1982) (per curiam). Title VII provides in relevant part:

> It shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, <u>sex</u>, or national origin[.]

42 U.S.C. § 2000e-2(a)(1) (emphasis added).

Binding Eighth Circuit precedent holds that the term "sex" as it appears in Title VII does not include "transsexualism."[2/] *Sommers*, 667 F.2d at 750. "Because Congress has not shown an

---

[2/] While the Club is sensitive to the fact that many consider the term "transsexualism" outdated or offensive, when the Eighth Circuit used that term in 1982, it carried the same meaning that the term transgender carries

2

intention to protect transsexuals, we hold that discrimination based on one's transsexualism does not fall within the protective purview of [Title VII]." *Id.*

*Sommers* clearly requires dismissal of the Complaint, which lacks any allegations that Plaintiff experienced any adverse employment action on account of being a woman. *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 25 (1993) (Ginsburg, J., concurring)) ("The critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed."). While our culture has changed in many ways since Congress enacted Title VII more than 50 years ago, those cultural shifts do not alter the plain meaning of the word "sex" as used in Title VII. Likewise, Plaintiff cannot use "sex stereotyping" precedent to create a cause of action for transgender discrimination, which the Eighth Circuit has held does not exist.

### B. The Term "Sex" in Title VII Does Not Include Transgender Identity.

Title VII lists "sex" as a protected characteristic but does not include transgender identity. 42 U.S.C. § 2000e-2(a)(1). The Court's analysis should begin with an assessment of the legislative intent embodied in the plain meaning of the term "sex" as used in Title VII:

> As in all cases involving statutory construction, "our starting point must be the language employed by Congress," *Reiter v. Sonotone Corp.*, 442 U.S. 330, 337, 99 S.Ct. 2326, 2330, 60 L.Ed.2d 931 (1979), and we assume "that the legislative purpose is expressed by the ordinary meaning of the words used." *Richards v. United States*, 369 U.S. 1, 9, 82 S.Ct. 585, 591, 7 L.Ed.2d 492 (1962). Thus "[a]bsent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2055, 64 L.Ed.2d 766 (1980).

*Am. Tobacco Co. v. Patterson*, 456 U.S. 63, 68 (1982) (interpreting Title VII). Consistent with this analytical framework, *Sommers* holds that "for the purposes of Title VII the plain meaning must be

---

today. *Id.*, at 749 n.2 ("A transsexual has been described . . . as one born with the anatomical genitalia of one sex but whose self-identity is of the other sex.").

3

ascribed to the term 'sex' in absence of clear congressional intent to do otherwise." *Sommers*, 667 F.2d at 750.

No legislative history suggests Congress intended to include the concept of "gender identity" or "transgender identity" in the word "sex" when enacting Title VII in 1964. *Id.* ("legislative history does not show any intention to include transsexualism in Title VII."). Moreover, since Title VII's passage, legislative activity reflects a recognition by Congress, itself, that no intent to create a transgender discrimination claim in Title VII existed when that law was passed. Congress has on many occasions debated whether to amend Title VII to add gender identity as a protected characteristic. *See, e.g.*, H.R. 2015, 110th Cong. (2007); H.R. 3185, 114th Cong. (2015) (the proposed Employment Non-Discrimination Act); S. 1858, 114th Cong. (2015) (the proposed Equality Act). However, those legislative efforts failed.

Finding that neither the plain text nor legislative history of Title VII supports recognition of a claim of transgender discrimination, the Eighth Circuit has held that the word "sex" in Title VII must be read literally to exclude transgender status. *Sommers*, 667 F.2d at 750. This Court must reach the same conclusion. *See BPS Guard Servs. v. NLRB*, 942 F.2d 519, 524 (8th Cir. 1991) (finding Eighth Circuit holdings bind all district courts in the circuit, and district courts must follow those holdings until reversed by the Eighth Circuit en banc or the United States Supreme Court).[3/]

Notably, while the Club concedes that sexual orientation-based discrimination is not the same as a transgender discrimination claim, case law concerning sexual orientation-based discrimination is instructive. Following Eighth Circuit precedent, Judge Jean C. Hamilton recently

---

[3/]     *Sommers* remains good law. Although the Eighth Circuit, in *Hunter v. United Parcel Serv., Inc.*, 697 F.3d 697 (2012), considered a claim for gender non-conformity discrimination, the Court did not hold that transgender identity is a protected characteristic under Title VII. *Id.* at 702-04. Instead, in affirming summary judgment in *Hunter*, the Eighth Circuit simply focused on the employer's lack of awareness that the plaintiff was transgender or gender non-conforming. *Id.* at 704.

4

reaffirmed that sexual orientation-based discrimination claims are not cognizable under Title VII. *Horton v. Midwest Geriatric Mgmt.*, No. 4:17CV2324 JCH, 2017 WL 6536576, at *1 (E.D. Mo. Dec. 21, 2017).[4/] Judge Hamilton's narrow interpretation of Title VII to confirm that sexual orientation is not included in the term "sex" reinforces the reasoning and effect of *Sommers* concerning the similar question of whether the word "sex" can be read expansively to include transgender status. Clearly, in the Eighth Circuit, it cannot.

### C. Plaintiff Cannot Rely on a Sex-Stereotyping Theory to Create a Transgender Discrimination Cause of Action.

Plaintiff cannot create a cause of action that Congress never enacted and that the Eighth Circuit has held not to exist. Nor can Plaintiff end-run around the plain text of Title VII with a clever nod in her Complaint to case law concerning sex-stereotyping. Again, precedent dealing with sexual orientation-based discrimination claims is instructive. In that context, "[c]ourts have routinely rejected attempts to use a sex-stereotyping theory to bring under Title VII what is in essence a claim for discrimination on the basis of sexual orientation." *Pambianchi v. Arkansas Tech Univ.*, No. 4:13-CV-00046-KGB, 2014 WL 11498236, at *5 (E.D. Ark. Mar. 14, 2014) (collecting cases). The *Pambianchi* court's logic, though directed toward sexual orientation, applies equally in the context of a claim for transgender discrimination.

In *Pambianchi*, the plaintiff alleged, among other things, discrimination based on her sexual orientation, which the plaintiff "attempt[ed] . . . to fit . . . under the theory of sex or gender stereotyping[.]" *Id.* at *4. The district court recognized a distinction between actionable discriminatory stereotyping (based on stereotypical notions of femininity and masculinity) and non-actionable discrimination (based solely on sexual orientation). *Id.* at *5. In *Pambianchi*, the plaintiff based her allegations entirely on the non-protected characteristic of sexual orientation.

---

[4/]  The Supreme Court recently refused to hear a case and resolve a circuit split on the issue of whether sexual orientation-based discrimination claims are allowed under Title VII. *Evans v. Georgia Reg'l Hosp.*, 850 F.3d 1248 (11th Cir. 2017), cert. denied, No. 17-370, 2017 WL 4012214 (U.S. Dec. 11, 2017).

The district court in *Pambianchi* recognized that such a non-protected characteristic "alone cannot be the alleged gender non-conforming behavior that gives rise to an actionable Title VII claim under a sex-stereotyping theory." *Id.* Accordingly, the court dismissed the plaintiff's sexual orientation-based discrimination claim. *Id.* at *5-6.

Likewise, here, Plaintiff relies solely on the non-protected characteristic of her transgender status. As such, Plaintiff's sex-stereotyping theory must fail for the same reasons that stereotyping claim in *Pambianchi* failed. *See, e.g., Pambianchi*, 2014 WL 11498236, at *4-5 (holding that allegations of sexual orientation-based sex stereotyping, such as being referred to as an "immoral lesbian," failed to state a Title VII sex stereotyping claim); *see also Bland v. Burwell*, No. 14-0226-CV-W-ODS, 2016 WL 110597, at *1-2 (W.D. Mo. Jan. 8, 2016) (dismissing Title VII sex discrimination claim based only on "allegations as to why [plaintiff] was discriminated based on his sexual orientation" because "[s]exual orientation is not a protected class under Title VII" and thus the plaintiff "summarily stating . . . that he was discriminated against 'on the basis of his race, sex and perceived sexual orientation' [was] insufficient" to state a claim) (citations omitted).

Although Plaintiff likely wishes to rely on the Supreme Court's decision in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 235 (1989), that case lends no support to Plaintiff's claim. Simply put, *Price Waterhouse* did not involve a transgender discrimination claim. In contrast to this action, the plaintiff in *Price Waterhouse* was a female at birth and continued to identify as a female. Nothing in *Price Waterhouse* suggests that Congress should be understood to have intended to create Title VII protection for people who transition from presenting as men to presenting as women. Instead, in that case, the Supreme Court extended protection to women who are being asked to conform to stereotypically female behaviors.

Here, Plaintiff alleges she is "a female individual" who began "presenting as female on June 25, 2016." Compl. ¶ 12. She alleges the Club fired her two days later "on the basis of [her]

6

sex, female," and that the Club "took [her] gender into account and terminated [her]." *Id.* These threadbare allegations do not support a facially plausible claim. Plaintiff has alleged no facts that suggest her co-workers, or anyone else at the Club, discriminated against her or made negative comments toward her for failing to conform to any female stereotypes. To the contrary, Plaintiff appears to allege that she is a woman who experienced discrimination for presenting as a woman, which is not a discrimination theory that *Price Waterhouse* endorses. Thus, regardless of how Plaintiff labels her claim (*e.g.*, discrimination for "gender non-conforming appearance and behavior" or gender stereotyping), the substance of her allegations (*i.e.*, I am a woman fired for presenting as a woman) will not support a claim upon which relief can be granted.

## IV.     CONCLUSION

WHEREFORE, Defendant Chess Club and Scholastic Center of St. Louis respectfully requests that the Court enter an Order granting Defendant's Motion to Dismiss Plaintiff's Complaint, dismissing with prejudice the action in its entirety, and granting any further relief that the Court deems just and proper.

Respectfully submitted,
**BRYAN CAVE LLP**

By: /s/ Travis R. Kearbey
Travis R. Kearbey, #531875
Kathryn P. Scott, #70350
One Metropolitan Square
211 North Broadway, Suite 3600
St. Louis, Missouri  63102
Telephone:  314-259-2482
Facsimile:  314-259-8482
E-mail:  travis.kearbey@bryancave.com
kathryn.scott@bryancave.com

Attorneys for Defendant
Chess Club and Scholastic Center of St. Louis

11101660.3

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing was filed with the Court electronically and mailed first class, postage prepaid on this 3rd day of January, 2018 to:

Elaine Cao
3211 S. Grand Blvd.
Apt. 2F
St. Louis, MO 63118

*Pro se Plaintiff.*

                                                 /s/ Travis R. Kearbey

11101660.3