RECEIVED
FEB -5 2018
U.S. District Court
Eastern District of MO

FILED
FEB 05 2018
U.S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

Elaine Cao
*Plaintiff*

-v-

Case No. 4:17-cv-02736-HEA

Chess Club and Scholastic Center of St. Louis
*Defendant*

**MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLANTIFF'S COMPLAINT**

**I. INTRODUCTION**

Plantiff ("I") respectfully submits this memorandum in opposition to the Defendant's ("the Club") Motion to Dismiss Plantiff's Complaint.

**II. DISCUSSION**

**A. Precedent Indicates that "Sex" in Title VII Covers More than the Plain Meaning.**

Defendant requests that "[t]he Court's analysis should begin with an assessment of the legislative intent embodied in the plain meaning of the term "sex" as used in Title VII." (p.32) However, it is clear that judicial precedent indicates that this is not the correct interpretation. Over the years, the Supreme Court has interpreted this statute to include protections against sex-sterotyping (*Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989)) and sexual harassment (*Meritor Savings Bank v. Vinson*, 477 U.S. 57 (1986)). Lower courts have also recently interpreted this statute to include protections for sexual orientation (*Hively v. Ivy Tech Community College*, 7th Cir. (2017)) and, indeed, gender identity (*Smith v. City of Salem, Ohio*, 6th Cir. (2004)).

Neither is it useful to rely on the legislative intent of Title VII. Even the late Justice Scalia is in agreement with this, writing for the unanimous Supreme Court that "[s]tatutory prohibitions often go beyond the principal evil to cover reasonably comparable evils, and it is ultimately the

provisions of our laws rather than the principal concerns of our legislators by which we are governed." *Oncale v. Sundowner Offshore Services, Inc.* 523 U.S. 75 (1998) (interpreting Title VII)

### B. *Sommers* Is Not Controlling Precedent.

Defendant relies upon *Sommers v. Budget Mktg, Inc.*, 8th Cir (1982) to claim that controlling precedent requires dismissal. The judgment states in relevant part, "for the purposes of Title VII the plain meaning must be ascribed to the term "sex" in absence of clear congressional intent to do otherwise. Furthermore, the legislative history does not show any intention to include transsexualism in Title VII."

However, intervening Supreme Court rulings discussed above- in 1985, 1989, and 1998- have interpreted the statute differently. In particular, that court has repeatedly ruled that discrimination based on factors that fall outside the plain meaning of "sex" still constitute violations of Title VII, and that relying on the legislative intent of Congress is not useful in interpreting Title VII. Defendant hastily points out that the above-mentioned cases- *Hopkins*, *Vinson*, and *Oncale*- do not deal with transgender complaintants. However it is nevertheless clear that the ruling in *Sommers*- that "the plain meaning must be ascribed to the term 'sex'"- is inconsistent with those decisions. Therefore, *Sommers* should be considered to have already been overturned by the Supreme Court.

As a final note, the facts of *Sommers* are substantively different from the case at hand. In particular, the defendant in that case had a legitimate business interest in terminating a transgender employee: "a number of female employees indicated they would quit if Sommers were permitted to use the restroom facilities assigned to female personnel". On the other hand, the Club has no such interest- most of my work was done off-site, and the Club uses single-occupancy, gender-neutral restrooms.

### C. Defendant has Claimed Ignorance of my Transgender Identity.

In Defendant's position statement, it is claimed: "[P]rior to the June 27th meeting- which was called precisely so that Mr. Thompson could inform Cao of the Club's decision not to reassign her-

Cao had not presented herself as anyone other than [birth name] to Mr. Thompson. ... An employer cannot be motivated by knowledge it did not have."

This appears to suggest that the Club was not aware of my transgender status prior to the phone call of June 27th, despite the fact that I had earlier visited the Club wearing a sundress and ballet flats. I said in my response: "It is very difficult to believe that Mr. Thompson was not aware of my transgender status prior to having contacted me on June 27th, as, on June 25th, I went to the Club while wearing a sundress and makeup, and asking to be referred to as Elaine for the indeterminate future. Though we never had a conversation about my transgender status, it seems unbelievable that he was not made aware of my gender presentation prior to this."

If Defendant's claim is to be believed, however, it would appear that they believed me to be a crossdresser- and on my own time, at that, as I was not scheduled to work June 25th. Indeed, I had not originally planned to present as female while working until at least several months afterwards, when I would be more comfortable with my appearance. If this claim is true, then Defendant must have terminated my contract for crossdressing; as the Club points out, "[a]n employer cannot be motivated by knowledge it did not have." Being terminated for crossdressing while "off the clock" falls within the plain definition of sex-sterotyping. *See EEOC v. Boh Brothers Construction Company*, 5th Cir. (2013), where it was found that the complaintant was laid off for "not being manly enough". *See* also *Smith v. City of Salem, Ohio*, 6th Cir. (2004), where the complaintant was terminated for crossdressing while off the clock, while sitll presenting male while on-duty.

### D. Sex-Sterotyping Theory Must Include Transgender Protections.

Even if the above interpretation of events is implausible, it illustrates that transgender persons must be covered by sex-sterotyping theory. According to a still-standing part of *Sommers*: "Plaintiff, for the purposes of Title VII, is male because she is an anatomical male." Though this contradicts my personal preferences, it does appear to be standing precedent. After all, at the time my employment was terminated, all my identifying documents had my birth name and a male gender marker. Therefore, by this interpretation, it would be evident that being transgender, much

like crossdressing, falls under the plain definition of sex-sterotyping. (i.e. "I am a man fired for not acting masculine enough)

Regardless of my legal (or medical) sex (or gender), what matters is my sex as perceived by the Club. It is irrelevant whether or not a complaintant actually belongs to a protected class; what matters is whether or not the employer perceived the complaintant to belong to that class. *See Fogleman v. Mercy Hospital,* 3rd Cir. (2002) *See also Kallabat v. Michigan Bell Telephone Co.* E.D. Mich. (2015) And it is clear that, as of the time when I was terminated, my manager perceived me to be male, as he insisted on referring to me with my birth name and used male pronouns.

The counterfactual that should be used is a situation in which I am perceived as female by the Club; presumably I am a cisgender female, born with female genitalia and a female gender marker on my original birth certificate, rather than being born with male genitalia and assigned male. The effect of my allegations is that if I had been perceived as female, and everything else had stayed the same, my behavior would not have caused my termination or, indeed, have been out of the ordinary. *See Hively v. Ivy Tech Community College,* 7th Cir. (2017): "The counterfactual we must use is a situation in which Hively is a man, but everything else stays the same..."

### E. Transgender Protections Are Covered By The Plain Meaning of "Sex".

Further, being transgender falls under the obvious, simple standard of "an employer would employ someone of one sex but would not employ someone of equal ability of the other sex". *See Rajender v. University of Minnesota,* 8th Cir. (1973) Quite simply, the acts I allege the Club to have committed (employing me as a male, but not as a female) falls under this plain definition.

### F. Reliance on *Pambianchi* is Uninstructive And Dishonest.

Defendant's rebuttal of my sex-sterotyping claim relies heavily on *Pambianchi v. Arkansas Tech Univ.* E.D Ark. (2014). However, discrimination based on sexual orientation is obviously different than discrimination based on gender identity- they are two different questions addressing the protected status of two different groups of people. For example, in a sexual orientation claim, the complaintant alleges that only one aspect of her presentation is nonconforming with her sex

sterotype. (i.e. her partner) Here, I allege that all aspects of my presentation are nonconforming with my (perceived) sex sterotype, which presents a significantly stronger argument for sex-sterotyping. It is not useful or instructive to rely on caselaw that relates to a different question; citations like "[s]exual orientation is not a protected class under Title VII" have no relevance. Though I do believe that discrimination based on sexual orientation is protected under Title VII, that question is not relevant to the case at hand.

Further, Defendant appears to claim that *Pambianchi* was dismissed primarily because the plantiff's status as a lesbian was not protected as a part of sex-sterotyping theory. On the contrary, the *Pambianchi* court analyzed the facts of the case and determined that the defendant had presented several valid, undisputed reasons for terminating the plantiff. (e.g. that the plantiff had committed serious breaches of conduct, including the defendant's sexual harassment policy and the policies of a third party) The Club, on the other hand, has not presented any legitimate reasons for terminating me before this Court- or, indeed, even denied that my contract was terminated because I revealed my transgender status. *Pambianchi*'s failures on the merits of her case do not have relevance in her status in a protected class.

### III. CONCLUSION

Defendant has not presented any legitimate reasons for terminating me before this Court. Under the framework established in *McDonnell Douglas Corp. v. Green* 411 U.S. 792 (1973), if Defendant is unable or unwilling to bear this burden of production, Plaintiff should soon be entitled to favorable judgment as a matter of law.

Wherefore, the Plaintiff respectfully requests that the Court deny the Defendant's Motion to Dismiss Plantiff's Complaint, and grant such other relief as the Court deems just and proper.

Respectfully submitted,
Elaine Cao

3211 S Grand Blvd, Apt 2F
St. Louis, MO 63118
Cell: 314 295 1600
email: elainecao93@gmail.com
Pro se plantiff