UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ELAINE CAO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:17-cv-02736-HEA |
| ) | |
| CHESS CLUB AND SCHOLASTIC CENTER ) | |
| OF ST. LOUIS, ) | |
| ) | |
| Defendant. ) | |

## REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Defendant Chess Club and Scholastic Center of St. Louis ("Chess Club") does not believe anyone should face employment discrimination on the basis of transgender status, and the Chess Club certainly did not engage in such discrimination with respect to Plaintiff. If this case were to move forward to discovery, evidence would show that the decision-maker at the Chess Club who terminated Plaintiff's employment did not know about Plaintiff's transition when he decided to terminate Plaintiff's employment for legitimate business reasons. Those points, however, make no difference in the context of deciding the Chess Club's Rule 12(b)(6) motion.

Instead, the Chess Club's motion to dismiss asks this Court to follow binding precedent—not to weigh to the question of whether the Eighth Circuit arrived at the right answer when it decided *Sommers v. Budget Mktg., Inc.* more than 35 years ago. *See* 667 F.2d 748 (1982) (per curiam). The Supreme Court has never held that Title VII prohibits transgender-based discrimination, so the *Sommers* holding that Title VII affords no protection against transgender discrimination remains good law. Thus, by referring the Court to decisions from

other circuits and straining to imply a conflict between *Sommers* and Supreme Court cases that did not involve transgender discrimination, Plaintiff invites the Court to engage in a debate that binding precedent will not permit. Eighth Circuit decisions are "controlling until overruled by [the Eighth Circuit] en banc, by the Supreme Court, or by Congress." *M.M. ex rel. L.R. v. Special Sch. Dist. No. 1,* 512 F.3d 455, 459 (8th Cir. 2008). Accordingly, *Sommers* mandates dismissal.

I.    DISCUSSION

    A.    *Sommers* **Should Not Be Disregarded in Favor of Inconsistent Decisions From Other Circuits.**

By advocating reliance on decisions from the Sixth and Seventh Circuits, Plaintiff asks the Court to act outside its authority. A district court located within this circuit cannot rely on precedent from other circuits to reject Eighth Circuit holdings. *Hood v. United States*, 342 F.3d 861, 864 (8th Cir. 2003). Indeed, not even a panel of the Eighth Circuit Court of Appeals has the authority to disregard a prior panel's decision. *Prudential Ins. Co. of Am. v. Nat'l Park Med. Ctr., Inc.*, 413 F.3d 897, 904 (8th Cir. 2005); *United States v. Wright*, 22 F.3d 787, 788 (8th Cir. 1994) ("a panel of this Court is bound by a prior Eighth Circuit decision unless that case is overruled by the Court sitting *en banc*"). Furthermore, taking out of context analytical reasoning from factually distinguishable Supreme Court cases does not authorize a district court to disregard the Eighth Circuit's clear holdings. *See, generally, Gamboa-Brambila v. United States*, No. C16-4091-MWB, 2016 WL 4523476, at *2 (N.D. Iowa Aug. 29, 2016) (district court cannot follow the reasoning of another court extending a Supreme Court rationale in a manner inconsistent with an Eighth Circuit holding "where there is binding Eighth Circuit precedent").

2

Instead, the Eighth Circuit's holdings should be followed until they are clearly reversed. *See M.M.*, 512 F.3d at 459; *BPS Guard Servs. v. NLRB*, 942 F.2d 519, 524 (8th Cir. 1991).[1/]

### B. Supreme Court Precedent Does Not Address Transgender Discrimination.

Plaintiff strains to argue that the Supreme Court's decisions concerning sexual harassment and sex stereotyping are "inconsistent" with *Sommers*, but she concedes that *Sommers* has not been reversed. Plaintiff misplaces reliance on *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989); *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57 (1986); and *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75 (1998), to argue that "discrimination based on factors that fall outside the plain meaning of 'sex' still constitute violations of Title VII." *See* Memo. in Opp. to Defendant's Motion to Dismiss Plaintiff's Compl., p. 2. These cases actually reinforce that Title VII's prohibition of sex discrimination focuses on discrimination against a man for being a man or against a woman for being a woman. *See Price Waterhouse*, 490 U.S. at 241 ("The critical inquiry, the one commanded by the words of [Title VII], is whether **gender** was a factor in the employment decision at the moment it was made.") (emphasis added); *Meritor Sav. Bank, FSB*, 477 U.S. at 67 ("Sexual harassment . . . for **members of one sex** is every bit the arbitrary barrier to sexual equality at the workplace that racial harassment is to racial equality. Surely, a requirement that **a man or woman** run a gauntlet of sexual abuse in return for . . . being allowed to work . . . can be as demeaning . . . as . . . racial epithets.") (emphasis added); *Oncale*, 523 U.S. at 80 ("The critical issue, Title VII's text indicates, is whether **members of one sex** are exposed to disadvantageous terms or conditions of

---

[1/] An Eighth Circuit panel may revisit a prior panel's opinion if an intervening Supreme Court decision is inconsistent with the prior opinion, *see McCullough v. AEGON USA Inc.*, 585 F.3d 1082, 1085-87 (8th Cir. 2009); however, the Eighth Circuit has described this exception as authorizing an appellate panel to reconsider a prior panel's ruling—not as granting such authority to a trial court. *Id.* at 1085 (exception "permits **us**" to revisit prior decision (emphasis added)). *See also T.L. ex rel. Ingram v. United States*, 443 F.3d 956, 960 (8th Cir. 2006) ("it is well settled that **a panel** may depart from circuit precedent based on an intervening opinion of the Supreme Court that undermines the prior precedent" (emphasis added)).

3

employment to which members of the other sex are not exposed.") (emphasis added). *See also Los Angeles Dept. of Water & Power v. Manhart*, 435 U.S. 702, 707, n. 13, 98 S.Ct. 1370, 1375, n. 13, 55 L.Ed.2d 657 (1978) ("[i]n forbidding employers to discriminate against individuals because of their sex, Congress intended to strike at the entire spectrum of disparate treatment of men and women resulting from sex stereotypes." (internal quotation marks omitted)).

  C. **The Complaint Does Not Allege a Sex Stereotyping Claim.**

Neither *Price Waterhouse*, nor *Meritor*, nor *Oncale* involved a transgender discrimination claim. Furthermore, even if *Sommers* were not binding authority, Plaintiff's effort to conflate unlawful sex stereotyping with transgender discrimination should be rejected. Consistent with the view that federal courts have long expressed, the Chess Club understands transgender status to be much more than a person assigned a particular sex at birth choosing at some point to adopt stereotypical norms of the opposite sex, such as manner of dress. *See Jeune v. U.S. Atty. Gen.*, 810 F.3d 792, 802 n.6 (11th Cir. 2016); *Meriwether v. Faulkner*, 821 F.2d 408, 418 n.6 (7th Cir. 1987) (recognizing that presenting as transgender is different from cross-dressing); *Sommers*, 667 F.2d at 749 n.2; *Pinneke v. Preisser*, 623 F.2d 546, 548-49 (8th Cir. 1980). Transgender status involves something more than fashion choices. *Id.*

Attempting to squeeze transgender discrimination into the concept of unlawful sex stereotyping that *Price Waterhouse* recognized unfairly suggests that transgender status can be reduced to a collection of stereotypes. To the contrary, a decision to "present" as a transgender woman does not require a person to start wearing dresses and make-up. Likewise, chest hair and bulging biceps need not accompany a decision to "present" as a transgender man. Transgender status concerns a person's identity—not whether his or her mannerisms and appearance align

4

11422912.3

with any particular gender stereotypes. *See, generally, Jeune*, 810 F.3d at 802 ("being a gay man who dresses like a woman does not necessarily mean that one is also a transgender individual").

Applying these concepts to Plaintiff's factual allegations—and treating those allegations as true for purposes of the Chess Club's motion to dismiss—Plaintiff is "a female individual" and was fired after "presenting as female on June 25, 2016." *See* Compl. § III.[2/] These allegations do not fit within the *Price Waterhouse* framework of unlawful sex stereotyping, which would require Plaintiff allege, for example, that she is a woman but did not satisfy her employer's assumptions of what women look and act like. *Price Waterhouse*, 109 S.Ct. at 1791 (sex stereotyping involves, for example, "an employer who acts on the basis of a belief that a woman cannot be aggressive, or that she must not be, has acted on the basis of gender"). In contrast, the Complaint alleges Plaintiff is female and that she was fired because she presented as a female.[3/] *See* Compl. § III. Thus, even if *Sommers* did not foreclose Plaintiff's transgender-discrimination claim, she would find no support for her legal theory in *Price Waterhouse* or its progeny concerning the concept of unlawful sex stereotyping.

## II.  CONCLUSION

For the foregoing reasons, Defendant Chess Club and Scholastic Center of St. Louis respectfully requests that the Court enter an Order granting Defendant's Motion to Dismiss Plaintiff's Complaint, dismissing with prejudice the action in its entirety, and granting any further relief that the Court deems just and proper.

---

[2/] Complaint citations in this reply brief refer to Plaintiff's typed Complaint allegations (Dkt. 1).
[3/] Notably, Plaintiff's motion to file an amended complaint does not change her legal theory; instead, it merely seeks to expand the relief she seeks. To the extent she presents allegations in her opposition to the Chess Club's motion to dismiss that do not appear in her Complaint, those allegations should be ignored. *See Morgan Distrib. Co., Inc. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989) ("[I]t is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss.") (internal quotation marks and citation omitted).

5

11422912.3

        Respectfully submitted,

        **BRYAN CAVE LLP**

        By: */s/ Travis R. Kearbey*
            Travis R. Kearbey, #531875
            Kathryn P. Scott, #70350MO
            One Metropolitan Square
            211 North Broadway, Suite 3600
            St. Louis, Missouri  63102
            Telephone:  314-259-2482
            Facsimile:  314-259-8482
            E-mail: travis.kearbey@bryancave.com
                    kathryn.scott@bryancave.com

        Attorneys for Defendant
        Chess Club and Scholastic Center of St. Louis

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was filed with the Court electronically and mailed first class, postage prepaid on this 12th day of February, 2018 to:

Elaine Cao
3211 S. Grand Blvd.
Apt. 2F
St. Louis, MO 63118

*Pro se Plaintiff.*

        */s/ Travis R. Kearbey*

11422912.3